## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| NOBLE SYSTEMS CORP., INC.,      ) | |
|       ) | |
|     Plaintiff,      ) | |
|       ) | |
| v.      ) | CIVIL ACTION FILE |
|      ) | NO. _____ |
| AGR FIELD SERVICES, LLC; AGR     ) | |
| GROUP, LLC; ALL GLOBAL     ) | |
| RESOURCES LLC; ALL GLOBAL     ) | |
| RESOURCES L.L.C.; ENERGYCARE,   ) | **JURY TRIAL** |
| LLC; ENERGY PROFESSIONALS, LLC; ) | **DEMANDED** |
| SALES VERIFICATION COMPANY,   ) | |
| LLC; TEAMWORKS MARKETING, LLC; ) | |
| US POWER AND GAS, INC.; UTILITIES ) | |
| MARKETING GROUP, LLC; UTILITY  ) | |
| SALES MANAGEMENT LLC; UTILITY  ) | |
| SALES MANAGEMENT L.L.C.;    ) | |
| QUANTUM ENERGY HOLDINGS, LLC; ) | |
| MATT JUDKIN, individually; HERB  ) | |
| ZERDEN, individually; ADOLFO   ) | |
| QUINTERO, individually; and SHAI  ) | |
| EGOSI, individually,     ) | |
|       ) | |
|     Defendants.     ) | |

## COMPLAINT

Plaintiff Noble Systems Corp., Inc., ("Plaintiff" or "Noble") by and

through the undersigned counsel, files this Complaint against Defendants

AGR Field Services, LLC; AGR Group, LLC; All Global Resources LLC;

All Global Resources L.L.C.; EnergyCare, LLC; Energy Professionals, LLC;

Sales Verification Company, LLC; TeamWorks Marketing, LLC; US Power And Gas, Inc.; Utilities Marketing Group, LLC; Utility Sales Management LLC; Utility Sales Management, L.L.C., Quantum Energy Holdings, LLC (collectively, the "AGR Companies"); the owners and managers of the AGR Companies: Matt Judkin, Herb Zerden, and Adolfo Quintero (the "Executive Defendants," and together with the AGR Companies, "the AGR Defendants"); and Shai Egosi, an individual who provided computer consulting services to the AGR Defendants.

## INTRODUCTION

This action arises out of the AGR Defendants' operation of call centers located in St. Petersburg, Florida, and Las Vegas, Nevada, with a reported 1,000 to 1,200 agents, the vast majority of whom have been using proprietary and copyrighted software without a license or authorization from Plaintiff, the owner of the software. Although a related entity purchased licenses to use the software, AGR Defendants knowingly and willfully exceeded their number of authorized licenses through the illegal purchase of pirated license keys from Shai Egosi (or such other unauthorized individual). For years, unbeknownst to Plaintiff, AGR Defendants have operated their call centers illegally, making millions of dollars in profits from the

unauthorized reproduction, distribution, transfer, and/or use of Plaintiff's software.

Noble learned only recently of the AGR Defendants' unauthorized use of its software and demanded by letter dated October 28, 2016 that AGR Defendants immediately cease and desist their illegal activity. To date, AGR Defendants have not confirmed their intent to comply with Noble's demand. Upon information and belief, AGR Defendants' unauthorized use of Plaintiff's software continues to this day.

Plaintiff asserts claims for copyright infringement under 17 U.S.C. § 501, *et seq.*; circumvention of copyright protection measures under 17 U.S.C. § 1201(a); misappropriation of trade secrets under 18 U.S.C. § 1836(b); violation of the Uniform Trade Secrets Act under applicable state laws; deceptive and unfair trade practices under F.S.A. § 501, *et seq.*, and violation of the federal Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1961, *et seq.*, based on Executive Defendants' concerted activity and pattern of unlawful transactions through which they operated the AGR Companies as an illegal enterprise.

Plaintiff seeks damages of no less than $5,000,000 for unpaid license fees and disgorgement of Defendants' profits attributable to their illegal

activity, which are subject to doubling or trebling under federal and state statutes, and attorneys' fees under applicable state and federal law.

## PARTIES

1.

Noble is a Georgia company with its principal place of business at 1200 Ashwood Parkway, Suite 300, Atlanta, Georgia.   Noble, a global leader in contact center technology solutions, has made and continues to make substantial investments of time, effort, and expense, in designing, developing, testing, publishing, marketing, distributing, and licensing a wide variety of software products related to the operation of call centers.

2.

The AGR Companies are a group of commonly owned and operated companies that provide a variety of telemarketing, sales, brokerage, verification, and other services in the retail energy sector at call centers located in St. Petersburg, Florida, and Las Vegas, Nevada, as follows:

(a)     AGR Field Services, LLC is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Annie Rojas, at the same address.

(b)     <u>AGR Group, LLC</u> ("AGR Group") is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Herb Zerden, at the same address.

(c)     <u>All Global Resources LLC</u> is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Annie Rojas, at the same address.

(d)     <u>All Global Resources L.L.C.</u> is a Nevada limited liability company with its principal place of business located at 6275 S. Pearl Street, Suite #100, Las Vegas, Nevada, and may be served through its registered agent, Danny Rieke, at the same address.

(e)     <u>EnergyCare, LLC</u> ("EnergyCare") is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Jonathan Lo Blue, at the same address.

(f)     <u>Energy Professionals, LLC</u> ("Energy Professionals") is a Florida limited liability company with its principal place of business located

at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Colby Thomas, at the same address.

(g)     Sales Verification Company, LLC ("Sales Verification") is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Jacqueline O'Malley, at the same address.

(h)     Teamworks Marketing, LLC is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Quinn Jaquillard, at the same address.

(i)     US Power and Gas, Inc. is a Florida corporation with its principal place of business at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Colby Thomas, at the same address.

(j)     Utility Sales Management LLC is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida, and may be served through its registered agent, Stephen Upham, at the same address.

(k)    Utility Sales Management L.L.C. is a Nevada limited liability company with its principal place of business located at 6275 S. Pearl Street, Suite #100, Las Vegas, Nevada, and may be served through its registered agent, Laura Sepeda, at the same address.

(l)    Utilities Marketing Group, LLC is a Florida limited liability company with its principal place of business located at 9701 International Court North, Suite A, St. Petersburg, Florida and may be served through its registered agent, Stephen Upham, at the same address.

(m)    Quantum Energy Holdings, LLC is a Delaware corporation formed in December 2015 as the authorized or managing member of the foregoing entities with principal place of business located at 6275 S. Pearl Street, Suite #100, Las Vegas, Nevada.   Quantum Energy Holdings, LLC may be served through its registered agent, Laura Zepeda, at the same address.

3.

Matt Judkin is the President and Chief Executive Officer for the AGR Companies.  Matt Judkin is a resident of Nevada and may be served at the AGR Companies' Nevada office located at 6275 S. Pearl Street, Suite #100, Las Vegas, Nevada.

4.

Herb Zerden is the Chief Financial Officer for the AGR Companies. Herb Zerden is a resident of Florida and may be served at the AGR Companies' Florida office located at 9701 International Court North, Suite A, St. Petersburg, Florida.

5.

Adolfo Quintero is the Chief Operating Officer for the AGR Companies. Adolfo Quintero is a resident of Nevada and may be served at the AGR Companies' Nevada office located at 6275 S. Pearl Street, Suite #100, Las Vegas, Nevada.

6.

Shai Egosi is a resident of the State of Florida and may be served at his business address, 218 E. Bearss Avenue, Suite 306, Tampa, Florida. Upon information and belief, Shai Egosi is a computer consultant who circumvented security measures to allow the AGR Defendants unauthorized and unlicensed access to Plaintiff's software.

## JURISDICTION AND VENUE

### 7.

This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* ("Copyright Act"), the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO Act").

### 8.

This Court is vested with subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1836(c), 28 U.S.C. §§ 1331 and 1338(a).

### 9.

This Court is additionally vested with subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to Plaintiff's causes of action over which this Court has original jurisdiction that they form part of the same case or controversy.

### 10.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as one or more Defendants reside in this District and a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.    Background**

11.

In or around 2002, Executive Defendants founded an energy sales and brokerage company under the "AGR" brand.  Through the years, the AGR brand grew into a preeminent sales organization serving the retail energy sector, which included door-to-door operations, independent energy brokerage, third party verification, collections, and contact data generation.

12.

As the AGR brand grew out of its one-room operation, Executive Defendants consulted with Shai Egosi, then an independent contractor, on AGR's technology needs and infrastructure.    Executive Defendants purchased computer equipment and professional services from Shai Egosi as the AGR brand expanded to call centers in Florida and California.

13.

In 2004, Shai Egosi became employed by TouchStar Software Corporation ("Touchstar"), a company located in Aurora, Colorado, that specialized in call center technologies.  While employed with TouchStar,

Shai Egosi provided client installations, training, technical support, and software development.

**B.      The TouchStar Agreement**

14.

With the continued growth of the AGR brand and expansion of its call centers, Executive Defendants looked to call center technology to assist with its operations to increase the efficiency and productivity of its agents, who at the time were making and receiving calls manually.

15.

In September 2005, Executive Defendants contracted with TouchStar (via Shai Egosi) to purchase a call center system, including software licensing, installation and configuration, training, and technical support. The contracting entity, as listed on the Sales and Installation Agreement ("Agreement") with TouchStar, was "AGR Group, Inc.," a California corporation.

16.

Under the terms of the Agreement, TouchStar remained the owner of the software, while AGR Group, Inc. was "granted a license to certain software" in connection with operation of the call center system.

17.

The Sales Confirmation attached to the Agreement confirmed the AGR Group, Inc.'s purchase of 32 software licenses for its Florida call center, and 72 licenses for its California call center, for a total of 104 licenses.

18.

AGR Group, Inc. also executed additional orders for the purchase of SQL and telephony servers for both Florida and California call centers.

19.

The servers, once installed, performed "license checks" that monitored the number of active agents utilizing the TouchStar software and prohibited the number of active agents from exceeding the number of licensed agents.

20.

Over the next few years, AGR Group, Inc. and later another affiliated entity known as "UMG, LLC" purchased additional TouchStar software licenses to accommodate the growing call centers in Florida and California.

C.    **Noble Acquires TouchStar's Assets**

21.

In September 2009, Noble acquired TouchStar's assets, including the TouchStar brand and all intellectual property and more specifically the following computer programs for which valid copyrights have been duly and properly registered with the United States Copyright Office in full compliance with the Copyright Act:

| Name of Copyrighted Computer Program | Copyright Registration Number | Date of Publication |
|---|---|---|
| TouchStar: Administrator. | TX0007265612 | 1999 |
| TouchStar: Agent. | TX0007265619 | 1999 |
| TouchStar: AgentServer. | TX0007265606 | 1999 |
| TouchStar: Broadcaster. | TX0007265623 | 1998 |
| TouchStar: CallControl. | TX0007265622 | 1998 |
| TouchStar IVR Maker. | TX0007265616 | 2001 |
| TouchStar: Supervisor. | TX0007265608 | 1999 |

22.

One of Noble's immediate tasks upon acquisition was to secure and protect TouchStar's intellectual property, including by commencing legal action against infringing entities and individuals.

23.

In connection with one of those lawsuits, Noble obtained an affidavit from a former TouchStar employee who identified Shai Egosi as someone who "bypassed" the TouchStar software's "automatic shutdown program" for another customer "in violation of Noble's licensing restrictions."

24.

Without further evidence against Shai Egosi, however, Noble did not pursue any action against Shai Egosi at that time.

25.

Soon after the acquisition, Noble also reached out to each of TouchStar's customers, including ARG Group, Inc./UMG, LLC, to advise them of the acquisition and establish a relationship going forward.

26.

After receiving an estimate from Noble for maintenance and support of the TouchStar software, AGR Group, Inc./UMG, LLC elected not to enter into a new agreement with Noble.

D.   **Defendants' Infringement and Misappropriation of TouchStar Software**

27.

Unable to come to terms with Noble, Executive Defendants reached out to Shai Egosi, who was no longer employed by TouchStar and had his own consulting company, Egosi Marketing, Inc.

28.

Rather than purchasing additional TouchStar licenses from Noble (which, unlike TouchStar, would have required a term contract for maintenance and support services), Executive Defendants purchased pirated license keys to circumvent the software license checks in order to allow the AGR Companies to exceed their number of licensed users without Noble's knowledge.

29.

Upon information and belief, Executive Defendants purchased the pirated license keys from Shai Egosi (or such other individual who obtained unauthorized license keys through his or her prior employment with TouchStar or otherwise).

30.

Shai Egosi (or such other individual) was not authorized or permitted to personally reproduce, sell, transfer, or distribute the TouchStar software and has no ownership or other rights to the TouchStar software.

31.

At all times during the course of their dealings, Executive Defendants knew or should have known that Shai Egosi (or such other individual) was not authorized or permitted to personally reproduce, sell, transfer, or distribute TouchStar software or license its use for any purpose.

32.

At all relevant times, Executive Defendants knew or should have known that Noble was the sole owner of TouchStar's assets and intellectual property, and that only Noble was authorized to sell additional licenses or otherwise permit the reproduction, use, transfer, sale, and distribution of TouchStar software.

33.

Over the years, Executive Defendants continued to expand the AGR brand to include each of the AGR Companies, with approximately 1,200

agents at call centers located in Florida, California (now closed), and Nevada, all of whom used the TouchStar software.

34.

Upon information and belief, the AGR Companies currently utilize version 5.7.0 of the TouchStar software at the Florida call center, as follows:

- EnergyCare – 115 agents;

- Energy Professionals – 100 agents;

- AGR Group – 275 agents;

- Sales Verification – 100 agents.

35.

Upon information and belief, the remaining AGR Companies utilize an additional 200 agents, for a total of approximately 600-800 agents at the Florida call center who use the TouchStar software.

36.

Upon information and belief, there are approximately 400 agents at the Nevada call center who use the TouchStar software.

37.

The AGR Companies' use of the TouchStar software by approximately 1,200 agents is far in excess of the number of authorized

licenses, and Executive Defendants are aware that the excess licenses were pirated and unauthorized.

38.

The use of pirated TouchStar software is well known within the AGR Companies and has been the subject of running jokes among employees.

39.

In addition to Executive Defendants, the IT department for the AGR Companies, which consists of several employees, is well aware that updates and bug fixes for the TouchStar software is not available because it is unlicensed and unauthorized.

40.

With the exception of AGR Group, Inc. (now defunct) and UMG, LLC, none of the AGR Companies are licensed to use the Touchstar software. None of Defendants were authorized to reproduce, sell, distribute, or transfer the TouchStar software without Plaintiff's approval.

41.

Upon information and belief, the AGR Companies (and ultimately, the Executive Defendants) have profited millions of dollars from the illegal reproduction, distribution, transfer, and use of the TouchStar software,

which is advertised to clients of the AGR Companies to gain a competitive advantage.

42.

Noble only recently learned of the AGR Defendants' unauthorized use of TouchStar software.   After review of TouchStar's records, Noble identified sales orders totaling 225 licenses – 102 for the Florida call center and 123 for the California call center – as of the date of the acquisition.

43.

Noble was able to confirm AGR Defendants' infringing conduct with their employees.   One such employee of the AGR Companies contacted Noble's sales department to inquire about the purchase of Noble software to replace the TouchStar software.   During these discussions, the employee for the AGR Companies confirmed that the AGR Companies had 600-800 agents at the Florida call center and 400 at the Nevada call center, all of whom used TouchStar software, which is well in excess of the number of the AGR Companies' authorized TouchStar licenses.

44.

In a letter dated October 28, 2016, Noble demanded that the Executive Defendants and the AGR Companies immediately cease and desist from the

unauthorized and unlicensed use of TouchStar software.

45.

In a letter dated October 31, 2016, Noble also notified Shai Egosi of its claim based on his complicity with the Executive Defendants' illegal activities, including aiding and abetting the AGR Companies' infringement of TouchStar software.

46.

To date, upon information and belief, the AGR Companies have continued their unlawful and infringing conduct through the illegal use of the TouchStar software in connection with their ongoing call center operations.

## COUNT I – COPYRIGHT INFRINGEMENT
### (Direct and Contributory Against All Defendants)

47.

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

48.

Plaintiff is the sole owner and licensor of the TouchStar call center system software and the individual computer programs integrated therein protected by Plaintiff's duly registered copyrights.

49.

As the owner of the above-identified copyrights, and pursuant to the rights afforded to Plaintiff under the Copyright Act, 17 U.S.C. § 106, Plaintiff has the exclusive rights to do and/or authorize the reproduction, distribution, or transfer of ownership of the copyrighted works.

50.

Defendants have directly infringed the copyrights of Plaintiff by unlawfully reproducing, transferring, distributing, and/or selling pirated license keys to enable their unauthorized use of the TouchStar software, all without approval or authorization from Plaintiff.

51.

At a minimum, Defendants have contributorily infringed the copyrights of Plaintiff by inducing or materially causing the infringing conduct.

52.

As owners, each of Executive Defendants have actual knowledge of the infringement, or should have reason to know of the infringing conduct, as the AGR Companies' use of pirated TouchStar is well known within the company.

53.

To the extent the AGR Companies did not participate directly in the purchase of the pirated license keys, each of the AGR Companies are contributory infringers through their continued use of TouchStar software, which is known or should be known by the AGR Companies to be pirated.

54.

Defendants' infringing conduct has been willful within the meaning of the Copyright Act or, at a minimum, Defendants have acted with willful blindness to and in reckless disregard of Plaintiff's copyrights.

55.

As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, substantial damages for which the Defendants are liable, including, but not limited to, substantial lost profits and harm to Plaintiff's business reputation and goodwill.

56.

Accordingly, Plaintiff is entitled to recover damages from Defendants, including any and all losses suffered by Plaintiff as well as any and all profits Defendants have made as a result of their wrongful conduct, pursuant to 17 U.S.C. § 504(b).

57.

Alternatively, Plaintiff is entitled to recover statutory damages pursuant to 17 U.S.C. § 504(c), enhanced pursuant to 17 U.S.C. § 504(c) due to the willful nature of the Defendants' wrongful conduct.

58.

Plaintiff is further entitled to injunctive relief pursuant to 17 U.S.C. § 504 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for Defendants' wrongful conduct as (a) Plaintiff's copyrights are unique and valuable intellectual property, (b) Defendants' infringing reproduction, transfer, distribution, sales, and/or purchase of Plaintiff's copyrights has damaged, and has the potential to continue damaging, Plaintiff's business reputation and goodwill; and (c) Defendants' infringing use of Plaintiff's copyrights remains ongoing.

59.

Plaintiff is further entitled to recovery its attorneys' fees and expenses pursuant to 17 U.S.C. § 505.

## COUNT II: CIRCUMVENTION OF COPYRIGHT PROTECTION
## 18 U.S.C. § 1201

### (All Defendants)

60.

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

61.

The TouchStar software contains access control technology used to prevent access and use of the software by those who do not have a license or other legal access.

62.

When the number of users exceeds the number of purchased licenses, the unauthorized user will not be able to continue on the TouchStar software and the application terminates.

63.

Upon information and belief, Defendants willfully, intentionally, and maliciously circumvented the access control technology in violation of 17 U.S.C. § 1201(a) in order to exceed the number of authorized licenses.

64.

As a direct result of the circumvention, the AGR Defendants gained illegal access to the TouchStar software, which they have utilized in their operations for years at their call centers without authorization from Plaintiff.

65.

Defendants' circumvention of the access control technology has caused and will cause Plaintiff damages in amounts not yet ascertained.

## COUNT III: MISAPPROPRIATION OF TRADE SECRETS
## 18 U.S.C. § 1836(b)

### (All Defendants)

66.

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

67.

The TouchStar call center system software as a whole and the individual computer programs integrated therein are valuable trade secrets of Plaintiff, being comprised of proprietary and confidential business, scientific, technical, engineering, and/or economic information used in, or intended for use in, interstate or foreign commerce.

68.

Plaintiff has taken reasonable measures to keep such information secret by, among other means, securing registered copyright protection for specific computer programs integrated within the TouchStar call center system software. The TouchStar software also includes embedded security measures to prevent unauthorized reproduction, sale, distribution, or transfer.

69.

Plaintiff's trade secrets have independent economic value, actual and/or potential, derived from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

70.

Defendants have misappropriated the trade secrets of Plaintiff by improper means, including theft and bribery, with the intent of circumventing the software license checks in order to allow the AGR Companies to exceed their number of licensed users without Noble's knowledge; and, having acquired these trade secrets by improper means

themselves, did further disclose these trade secrets to another without express or implied consent of Plaintiff.

71.

Accordingly, Defendants are liable to Plaintiff for damages including, but not limited to, any and all losses suffered by Plaintiff as well as for Defendants' unjust enrichment pursuant to 18 U.S.C. § 1836(b)(3)(B).

72.

Defendants willfully and maliciously misappropriated Plaintiff's trade secrets through their acquisition and/or disclosure of Plaintiff's trade secrets by improper means, including, but not limited to, theft and bribery, without authorization, and did so with intent and/or knowledge that such misappropriation would cause injury or harm to Plaintiff.

73.

Accordingly, Plaintiff is entitled, pursuant to 18 U.S.C. § 1836(b)(3)(C) to recover from Defendants two times the damages sustained.

74.

Plaintiff is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) as Defendants' use of Plaintiff's misappropriated trade

secrets remains ongoing and has damaged, and has the potential to continue

damaging, Plaintiff's business reputation and goodwill, as well as other

harms for which Plaintiff has no adequate remedy at law.

75.

Plaintiff is further entitled to recover its attorneys' fees and expenses

pursuant to 18 U.S.C. § 1836(b)(3)(D).

### COUNT IV: MISAPPROPRIATION OF TRADE SECRETS
### F.S.A. § 688, *et seq.*, N.R.S. § 600A, *et seq.*, Cal. Civ. Code § 346, *et seq.*, and other state laws as applicable

### (All Defendants)

76.

Plaintiff realleges and incorporates the  foregoing paragraphs as if

fully set forth herein.

77.

The TouchStar call center system software as a whole and the

individual computer programs integrated therein are valuable trade secrets of

Plaintiff within the meaning of the Uniform Trade Secrets Act ("UTSA"),

being comprised of proprietary and confidential information existing in a

formula, compilation, program, device, method, technique and/or process.

78.

Plaintiff has taken reasonable measures to keep such information secret by, among other means, the use of exclusive licenses for distribution and securing registered copyright protection for specific computer programs within the TouchStar call center system software.  The TouchStar software also includes embedded security measures to prevent unauthorized reproduction, sale, distribution, or transfer.

79.

Plaintiff's trade secrets have independent economic value, actual and/or potential, derived from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

80.

Defendants have misappropriated the trade secrets of Plaintiff by improper means, including theft and bribery, with the intent of circumventing the software license checks in order to allow the AGR Companies to exceed their number of licensed users without Noble's knowledge; and, having acquired these trade secrets by improper means

themselves, did further disclose these trade secrets to another without express or implied consent of Plaintiff

81.

Accordingly, Defendants are liable to Plaintiff for the damages including, but not limited to, any and all losses suffered by Plaintiff as well as for Defendants' unjust enrichment.

82.

Defendants willfully and maliciously misappropriated Plaintiff's trade secrets within the meaning of the UTSA, as Defendants acquired and/or disclosed Plaintiff's trade secrets by the acts described above, without authorization, where such acts constitute theft, concealment, fraud, artifice, deception and/or other improper means, and did so with intent and/or knowledge that such misappropriation would cause injury or harm to Plaintiff.

83.

Accordingly, Plaintiff is entitled to recover from Defendants two times the damages sustained.

84.

Plaintiff is entitled to injunctive relief, as Defendants' use of Plaintiff's misappropriated trade secrets remains ongoing and has damaged, and has the potential to continue damaging, Plaintiff's business reputation and goodwill, as well as other harms for which Plaintiff has no adequate remedy at law.

85.

Plaintiff is further entitled to recover its attorneys' fees and expenses under the UTSA.

## COUNT V: DECEPTIVE AND UNFAIR TRADE PRACTICES, F.S.A. § 501, *et seq.*

### (All Defendants)

86.

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

87.

Defendants have engaged in deceptive and/or unfair trade practices, within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), by knowingly and purposefully reproducing, transferring, distributing, obtaining, receiving, and/or purchasing unlawfully or

improperly-obtained copies and/or unauthorized license keys for the TouchStar software; knowingly and purposefully receiving and using the pirated TouchStar software; and further using the TouchStar software in the course of the AGR Companies' business operations, all without authorization or permission from Plaintiff to do so.

88.

The actions of Defendants constitute unfair or deceptive trade practices made unlawful pursuant to F.S.A. § 501.204.

89.

Accordingly, Defendants are liable to Plaintiff for damages including, but not limited to, any and all losses suffered by Plaintiff as a result of Defendants' conduct pursuant to F.S.A. § 501.211(2).

90.

Plaintiff is further entitled to injunctive relief pursuant to F.S.A. § 501.211(1) as Defendants' unfair and deceptive practices, in the form of Defendants' ongoing unlawful and unauthorized use of the TouchStar call center system software, constitute continuing violations of the FDUTPA.

91.

Plaintiff is also entitled to recover its attorneys' fees and expenses pursuant to F.S.A. § 501.2105.

## COUNT VI: FEDERAL RICO VIOLATIONS, 18 U.S.C. § 1961, *et seq.* (Executive Defendants)

92.

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

93.

Executive Defendants each participated in and collectively conspired and endeavored to infringe the copyrights of Plaintiff and misappropriate the trade secrets of Plaintiff through a pattern or series of unlawful transactions by which Executive Defendants obtained, transferred, and/or obtained pirated TouchStar software for use by the AGR Companies, all without approval or authorization from Plaintiff.

94.

For years, Executive Defendants operated the AGR Companies as an illegal enterprise and generated millions of dollars in profits from the unauthorized and unlicensed use of TouchStar software at their Florida, California, and Nevada call centers.

95.

Executive Defendants engaged in racketeering activity through a related and continuous pattern, all of which were interrelated for the same or similar purpose of operating the AGR Companies' for-profit call centers using pirated TouchStar software, including by:

(a)   willfully infringing on Plaintiff's copyrights for the purpose of commercial advantage and private commercial gain, in violation of 18 U.S.C. § 2319;

(b)   illegally distributing and/or reproducing during any 180-day period at least one copy of Plaintiff's copyrighted software, which has a total retail value of more than $1,000, in violation of 18 U.S.C. § 2319;

(c)   knowingly stealing and misappropriating Plaintiff's trade secrets by fraud, artifice, and deception in violation of 18 U.S.C. 1832(a)(1);

(d)   knowingly duplicating, replicating, transmitting, and conveying Plaintiff's trade secrets, in violation of 18 U.S.C. § 1832(a)(2);

(e)   knowingly receiving, purchasing, or possessing Plaintiff's trade secrets, knowing the same to have been stolen or

misappropriated without authorization, in violation of 18 U.S.C.

§ 1832(a)(3); and

(f)     attempting and conspiring to commit the foregoing violations.

96.

The foregoing actions by Executive Defendants constitute "racketeering activity" within the meaning of 18 U.S.C. §1961(1), which Executive Defendants committed through a series of illegal transactions to accommodate the growth of the AGR Companies and the number of agents who required access to the TouchStar software.

97.

For the past several years and continuing to this day, the AGR Companies – at the direction of each of Executive Defendants – have made hundreds of thousands (if not millions) of calls throughout the country from their call centers in Florida, California, and Nevada using Plaintiff's proprietary and copyrighted software without license or authorization.

98.

Executive Defendants have generated millions of dollars from their illegal scheme and pattern of racketeering, which is continuing on a day-to-

day basis notwithstanding notice from Plaintiff that such use of its proprietary software was unauthorized and illegal.

99.

Each of Executive Defendants committed the foregoing predicate acts willfully or with actual knowledge of the illegal activity. With the knowledge and approval of Matt Judkin and Adolfo Quintero, Herb Zerden purchased the pirated software license keys from Shai Egosi (or such other unauthorized individual). At all relative times, each of Executive Defendants knew that Noble was the sole owner of the TouchStar software and that the continued use of pirated TouchStar software by the AGR Companies was illegal.

100.

The national scope of the Executive Defendants' pattern of racketeering activity has impacted and affected interstate commerce.

101.

The Executive Defendants, by conducting the affairs of the AGR Companies through a pattern of racketeering, are liable under Section 1962(c), which prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering activity.

102.

As a direct and proximate result of Executive Defendants' wrongful conduct in violation of the RICO Act, Plaintiff has suffered, and will continue to suffer, substantial damages for which Executive Defendants are liable, including, but not limited do, substantial lost profits and harm to Plaintiff's business reputation and goodwill.

103.

Accordingly, Plaintiff is entitled, pursuant to 18 U.S.C. § 1964(c), to recover from Executive Defendants three times the damages sustained.

WHEREFORE, Plaintiff respectfully requests that this Court award the following relief:

A.   Entry of judgment in its favor on all counts;

B.   Enjoinment of Defendants' continuing infringement of Plaintiff's copyrights;

C.   Enjoinment of Defendants' continuing misappropriation of Plaintiff's trade secrets;

D.   Enjoinment of Defendants' unfair and deceptive trade practices;

E.   Entry of an order impounding any and all infringing materials in the possession of Defendants;

F.      Pursuant to Count I, treble damages in an amount to be determined at trial, including any and all losses suffered by Plaintiff as well as any and all profits Defendants have made as a result of their wrongful conduct or, alternatively, statutory damages in the maximum amount allowable by law for Defendants' willful infringement of Plaintiff's copyrights;

G.      Pursuant to Count III, double damages in an amount to be determined at trial, including any and all losses suffered by Plaintiff as well as any and all unjust enrichment of Defendants made as a result of Defendants' wrongful conduct;

H.      Pursuant to Count IV, double damages in an amount to be determined at trial, including any and all losses suffered by Plaintiff as well as any and all unjust enrichment of Defendants made as a result of Defendants' wrongful conduct;

I.      Pursuant to Count V, damages for any and all losses suffered by Plaintiff;

J.      Pursuant to Count VI, treble damages in an amount to be determined at trial, including any and all losses suffered by Plaintiff as well as any and all profits Defendants have made as

a result of their wrongful conduct and/or any and all unjust enrichment of Defendants made as a result of Defendants' wrongful conduct;

K.      Reasonable attorney fees and expenses of litigation; and

L.      All other relief this Court deems necessary and proper in the interest of justice.

This 13th day of December, 2016.

Richard L. Robbins
Florida Bar No. 0651680
ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC
999 Peachtree Street, N.E.
Suite 1120
Atlanta, GA 30309
Telephone:  (678) 701-9381
Facsimile:   (404) 856-3250
Email:  rrobbins@robbinsfirm.com

*Attorney for Plaintiff*